# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD LEE JOHNSON,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>DAVID B. LONG, Warden,<br><br>　　　　Respondent. | Case No.  1:13-cv-01265 LJO GSA HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on June 24, 2010, of battery of a cohabitant (Cal. Penal Code § 273.5(a)) and intimidation of a witness (Cal. Penal Code § 136.1(c)(1)). (CT[1] 205-207, 244.) He was sentenced to a determinate term of 18 years in state prison. (CT 244.)

Petitioner timely filed a notice of appeal. On September 25, 2012, the Fifth District Court of Appeal affirmed the judgment. (LD[2] 1.) On October 24, 2012, Petitioner filed a

---

[1] "CT" refers to the Clerk's Transcript on Appeal.
[2] "LD" refers to the documents lodged by Respondent with his response.

1

petition for review in the California Supreme Court. (LD 5.) The petition was summarily denied on December 12, 2012. (LD 6.)

On February 10, 2013, Petitioner filed a petition for writ of habeas corpus in the Stanislaus County Superior Court. (LD 7.) The petition was denied on March 18, 2013. (LD 8.) He then filed a habeas petition in the Fifth District Court of Appeal on April 9, 2013. (LD 9.) The appellate court denied the petition without comment on April 19, 2013. (LD 10.) On April 28, 2013, Petitioner filed a habeas petition in the California Supreme Court. (LD 11.) The petition was summarily denied on June 10, 2013. (LD 12.)

On August 7, 2013, Petitioner filed the instant federal habeas petition in this Court. He raises the following grounds for relief: 1) The trial court erred in denying Petitioner's motion to substitute counsel; 2) Defense counsel rendered ineffective assistance by failing to conduct a reasonable pretrial investigation; 3) The State failed to disclose favorable evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). On October 25, 2013, Respondent filed an answer to the petition. On November 22, 2013, Petitioner filed a traverse.

## STATEMENT OF FACTS[3]

> In 2008, Lani Azevedo and Johnson lived together for about nine months. On December 6, 2008, the couple argued most of the day about a telephone number Johnson found on Azevedo's cell phone, and that evening, Azevedo decided she was going to leave. Johnson told her that, if she was going to leave, she had to do it immediately and could not gather her belongings. Johnson pushed Azevedo toward the door, and she resisted. He then grabbed her by the shirt and she ended up near the couch. In the process, Azevedo fell against a laundry basket and broke it. As she tried to get to the door, Johnson picked her up and "tossed" her into the railing outside the apartment. As a result, she sustained scratches and bruises to her wrist, hands, knees, back, chest, neck and face, and her watch was shattered and her toenail cracked. Azevedo got up and walked to a nearby store to get away from Johnson.
>
> Once at the store, Azevedo decided against calling the police because she was afraid Johnson would get mad and she didn't want anything to happen. Johnson walked over to the store and glared at Azevedo through the window. When Azevedo went outside to speak to Johnson, he asked her if she had called the police. She said no, but Johnson threatened that, if she did, she would know what

---

[3] The Fifth DCA's summary of the facts in its September 25, 2012, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir.2009), *cert. denied*, 130 S.Ct. 1086 (2010) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

"retaliation" or "payback" was. Azevedo was intimidated by the statement, but returned with Johnson to the apartment.

As they walked back to the apartment, the two exchanged threats. Johnson threatened to tell Azevedo's employer that she was working while under the influence of methadone. Azevedo said she would call Johnson's parole officer and tell her that he had been drinking and that they had had a "scuffle." Johnson then said that, if he went back to prison, he knew "how to work the system." Johnson's threats frightened Azevedo.

Back at the apartment, Johnson threw Azevedo's belongings out of the apartment and over the railing. Azevedo walked back toward the store and encountered a law enforcement officer. Azevedo did not want to make a police report and she did not want the officers to confront Johnson because she did not want the situation "to escalate." The officer noted that Azevedo was crying and shaking, and appeared scared. Azevedo eventually told police what happened. When Johnson was subsequently arrested, he smelled of alcohol, was agitated, and had bloodshot, watery eyes.

Azevedo had taken a dose of methadone on the morning of the incident, and in the afternoon, had had some sips of Smirnoff Ice. In his defense, Johnson called a pharmacist, who had previously testified as an expert on a patient's use and response to medications, to testify that, when a person takes methadone and alcohol, the methadone prolongs the alcohol intoxication, leading to more impairment, sedation and stumbling. It might also lead to a heightened sense of feeling threatened.

(LD 1.)

## DISCUSSION

**A. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is

therefore governed by its provisions.

**B.      Standard of Review**

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ

if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

5

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by*, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

**C.   Review of Claims**

1.   Motion for Substitution of Counsel and Cal. Penal Code § 995

Petitioner contends the trial court erred in failing to substitute counsel pursuant to People v. Marsden, 2 Cal.2d 118 (1970). He further claims the trial court erred in failing to set aside the information due to counsel's deficiencies. The claim was raised on direct appeal to the Fifth District Court of Appeals where it was denied in a reasoned decision. (LD 1.) He then raised it before the California Supreme Court and the claim was summarily rejected. (LD 6.) When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).

Petitioner also claims the trial court did not properly follow California Penal Code § 995 in denying Petitioner's request to set aside the information. Petitioner presented this claim by habeas petition to the California Supreme Court. The claim was denied without comment. In such a case as this where the decision is unexplained, the Supreme Court has stated that "a habeas court must determine what arguments or theories supported . . . or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 131 S.Ct at 784.  Petitioner bears the burden of showing that "there was no reasonable basis" for the state court decision. Pinholster, 131 S.Ct. at 1402.

The appellate court rejected Petitioner's claim concerning the motion to substitute counsel as follows:

> Johnson's only issue on appeal is that he contends the trial court erred when it failed to appoint new counsel after his fourth *Marsden* hearing. Specifically, Johnson argues that, once the court found a "prima facie showing" of ineffective assistance of counsel, it should have appointed new counsel for all purposes. We find no prejudicial error.
>
> *Procedural Background*
>
> The record reflects that the trial court, Judge Thomas Zeff, granted Johnson's first *Marsden* motion and appointed new counsel from Conflict I on March 6, 2009.[FN4] A month later, on April 9, 2009, the trial court, Judge Scott Steffen, denied Johnson's second *Marsden* motion.[FN5] Immediately following the denial of the second Marsden motion, a two-day preliminary hearing was held. Conflict I Attorney Hans Hjertonsson represented Johnson on the first day; Attorney Orenstein on the second day. The information was then filed on April 23, 2009.
>
> > FN4. In his motion, Johnson claimed there was a breakdown in communication between himself and Public Defender Bryant.  It does not appear that respondent received access to any of Johnson's *Marsden* motions other than the fourth one, which is at issue on appeal.
> >
> > FN5. Ruling on Johnson's second *Marsden* motion, Judge Steffan stated that he found Conflict I (this time Attorney Robert Orenstein) was, despite Johnson's claim to the contrary, adequately prepared for the preliminary hearing.
>
> On July 15, 2009, Johnson himself filed a section 995[FN6] motion to set aside the information based, in part, on a claim of ineffective assistance of counsel at the preliminary hearing. Specifically, Johnson claimed that counsel was ineffective for failing to acquire photographs of Azevedo prior to the preliminary hearing. Johnson claimed the photographs were exculpatory to his charge of battery. He also claimed counsel was ineffective for failing to adequately investigate his case, failing to elicit certain critical information from Azevedo, and that counsel spent only five minutes preparing for cross-examination of Azevedo at the preliminary hearing. At the hearing on the section 995 motion, the trial court suggested that Johnson's motion was more of a *Marsden* motion than a section 995 motion. Orenstein agreed and a *Marsden* hearing was scheduled.
>
> > FN6. Under section 995, a defendant may bring a motion to dismiss a criminal information where the defendant has been committed without reasonable or probable cause. (§995, subd. (a)(2)(B).)
>
> At the hearing on the third *Marsden* motion before Judge Steffen, Johnson made various complaints about Conflict I counsel: that counsel failed to complete and submit a "Three Strikes letter"; that counsel failed to provide him with the

7

transcripts from the "17(b)," the request to reduce a felony to a misdemeanor; that he and Hjertonsson argued about what Johnson thought was a possible *Brady*[FN7] violation and "some ... points" Johnson wanted argued in his section 995 motion; that both counsel have tried to dissuade Johnson from doing legal research and putting together motions; and that Orenstein failed to acquire the photographs of Azevedo.

> FN7. *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

Hjertonsson responded[FN8] that the Three Strikes letter was submitted in mid-July; that he had not promised Johnson that he would file certain motions, but that he would review everything and, if there was a basis to file a motion ("the 995, 17(b), and the *Romero* Motion") he would; and that he had contacted the prosecutor several times regarding the photographs and he had been told they would be given to him as soon as they were available. Although Hjertonsson thought there was a basis for a *Romero* motion, such a motion was untimely and only appropriate if Johnson was found guilty. As for preparation for the preliminary hearing, Hjertonsson acknowledged that he had not reviewed the case nor had any conversation with Johnson prior to the hearing, but that he did speak with Orenstein, who had spoken to Johnson at length. Orenstein provided Hjertonsson with a list of questions and a "brief explanation scenario of what happened...." Because Johnson's past record exposed him to a life sentence, Hjertonsson believed that it was his duty to persuade Johnson if the prosecution had a "good deal ... on the table."

> FN8. The reporter's transcript of the *Marsden* hearing incorrectly attributes Hjertonsson's response to Mr. Baker, the prosecutor, who was not present. (RT 39, 44.)

The trial court found that Johnson appeared to have a "disagreement on tactics" and some frustration in how Orenstein was handling his case, but that he had not established grounds for removal of counsel.

On October 14, 2009, Judge Steffen conducted a fourth *Marsden* hearing. Johnson's motion alleged that he was denied effective assistance of counsel at the preliminary hearing because counsel had failed to obtain photographs of Azevedo until two months after the hearing, and counsel "only spent five minutes" preparing for cross-examination of the witness. At the hearing, Johnson complained about Hjertonsson's representation during the preliminary hearing, specifically that Hjertonsson failed to present or prepare an affirmative defense, failed prepare adequately for the preliminary hearing, failed to ask Azevedo any questions about the intimidation charge, and failed to obtain and admit photographs of Azevedo. Johnson stated that he had spoken to Hjertonsson two days earlier and was shown his notes which indicated that he did not inquire about the photographs until "well after the prelim dates." One of those photographs of Azevedo's face, according to Johnson, showed "distress, but there is no evidence of any marks or any physical damage," refuting her claim that her face hit the railing outside the apartment when Johnson threw her. Johnson complained of Hjertonsson's failure to question Azevedo at the preliminary hearing about the supposed threats he made. Had he done so, according to Johnson, he could have had the section 136.1 charge dismissed. Finally, Johnson complained that, in the past month, he had sent 15 "kites" to Hjertonsson, but when he met with counsel, counsel said he did not have them and did not remember what was on them.

Hjertonsson, in response, explained that he believed he had previously addressed

Johnson's concerns about the preliminary hearing. Because he had not represented Johnson before the preliminary hearing, he could not say whether the photographs were requested or obtained prior to the hearing. Hjertonsson stated that he had received the 15 "kites" sent by Johnson and informed him that they would discuss them, but when they met, he did not have all of the "kites" with him. Nevertheless, the two went over "numerous issues" and spoke for "almost two hours."

Johnson then reiterated his concerns and noted specifically that Hjertonsson acknowledged he had no knowledge of any of the "kites" he sent him. Johnson also stated that he had "combed" over the preliminary hearing transcript, and that Hjertonsson had not asked Azevedo "one single question" regarding the supposed threats he made toward her. Johnson's overall concern was that Hjertonsson "refuses to help me make arrangements to have [the section 995] motion heard."

Hjertonsson clarified that he had not said he didn't have knowledge of any of the "kites," only that he did not remember all of them. But he had reviewed all of them and he did what he believed "was necessary at that point in time."

At the end of the hearing, the trial court stated that it would take Johnson's motion under submission.

On October 19, 2009, the trial court concluded that there was "at least a prima facie showing that [Johnson] has made his case for ineffective assistance of counsel with respect to the preliminary hearing." The court then appointed Michael Scheid from Conflicts II for the purpose of determining "whether or not there is ... sufficient grounds for a 995 motion based on ineffective assistance of counsel. If he determines that there is, he will represent you for purposes of the 995 motion, and we will see how that comes out in terms of where we go after that. [¶] If the 995 is granted on those grounds, then you've made your point, and if not, it's likely that Conflicts I will continue to represent you."

The trial court directed Scheid to interview Johnson, read the preliminary hearing transcript and files, and determine whether it would be appropriate to file a section 995 motion. The court stated that it thought that "technically the [*Marsden*] hearing is still under submission ... [¶] ... [¶] ... pending further proceedings," and made it clear that Scheid would be appointed to represent Johnson "for purposes of 995 only, specially appointed." In doing so, the court did not relieve Conflicts I.

At the next hearing, on November 10, 2009, Scheid stated that he did not think there was ineffective assistance on the part of the Conflicts I law firm by failing to file a section 995 motion. In making his decision, he had reviewed the preliminary hearing transcript, reviewed correspondence from Johnson to Scheid, reviewed correspondence from Johnson to "the Conflict I law firm," and he met with Johnson once and spoke with him on the telephone twice. In speaking with Johnson, Scheid "encouraged a wide-ranging discussion in spite of the narrow focus of [his] representation." Scheid stated that he found no ineffective assistance of counsel on the part of Conflict I law firm, "not just for failing to file a 995 motion, but I did not find ineffective assistance of counsel in their representation of Mr. Johnson to date." At that point, the trial court denied the *Marsden* motion and further scheduling ensued. Jury trial began June 22, 2010.

///
///
///

9

*Applicable Law and Analysis*

Johnson's claim on appeal is that the trial court erred in failing to appoint a new attorney after it conducted a fourth *Marsden* hearing. Specifically, Johnson argues that, once the court found ineffective assistance of counsel, it should have appointed new counsel for all purposes. While we agree that the procedure used by the trial court was incorrect, we do not agree with Johnson's analysis of the trial court's finding and find no prejudicial error.

"'"[A]*Marsden* hearing is ... an informal hearing in which the court ascertains the nature of the defendant's allegations regarding the defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement." [Citation.]' [Citation.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803, quoting *People v. Alfaro* (2007) 41 Cal.4th 1277, 1320.) The decision to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the trial court's discretion, and a defendant generally has no absolute right to more than one appointed attorney. (*Marsden, supra*, 2 Cal.3d at p. 123.) Nevertheless, "'"[a] defendant is entitled to [new appointed counsel] if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]"' [Citation.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.]" (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484; see also *People v. Lucky* (1988) 45 Cal.3d 259, 281 ["a trial court's duty to permit a defendant to state his reasons for dissatisfaction with his attorney arises when the defendant in some manner moves to discharge his current counsel"].) If, the defendant makes a showing during a *Marsden* hearing that the right to counsel has been substantially impaired, substitute counsel must be appointed as attorney of record for all purposes. (*People v. Sanchez* (2011) 53 Cal.4th 80, 84 (*Sanchez*).) The court in *Sanchez* specifically disapproved the procedure used by the trial court here, of appointing substitute or "conflict" counsel solely to evaluate a defendant's complaint that his attorney acted incompetently with, in the *Sanchez* case, respect to advice regarding the entry of a guilty or no contest plea.[FN9] (*Ibid*.)

> FN9. The opinion in *Sanchez* was issued on December 5, 2011; Johnson's fourth *Marsden* motion was denied on November 10, 2009.

Here, the trial court gave Johnson ample opportunity to explain the basis of his contentions. In fact, he repeated many of his complaints over the course of, at least, his second, third and fourth *Marsden* hearings. The trial court adequately sought responses from counsel, and after the hearing, and intervening events, the court denied Johnson's fourth *Marsden* motion.

We disagree with Johnson's contention that the trial court's preliminary finding of "ineffective assistance of counsel with respect to the preliminary hearing," required the trial court to appoint new counsel. The definition of "prima facie" is, "[S]ufficient to establish a fact or raise a presumption unless disapproved or rebutted.... [¶] ... At first sight; on the first appearance but subject to further evidence or information...." (Black's Law Dict. (8th ed.2004) p. 1228, col. 1.) The

> finding of a "prima facie" showing is not synonymous with a finding that continued representation of Johnson by Hjertonsson would result in a substantial impairment of his right to counsel. (*Sanchez, supra*, 53 Cal.4th at p. 90.)
>
> While we find that the trial court procedurally erred when it appointed conflict counsel for the purpose of determining if counsel was ineffective for failing to file a section 995 motion, we cannot say that Johnson was prejudiced by this action. During Johnson's fourth *Marsden* hearing, he had three main complaints regarding Hjertonsson's representation during the preliminary hearing: (1) that he failed to prepare an affirmative defense; (2) that he failed to ask Azevedo questions about the alleged intimidating threats; and (3) that he failed to obtain and admit photographs of Azevedo at the hearing. Johnson also complained that Hjertonsson had failed to address each of the concerns raised in the 15 messages he sent him between September 21, 2009 and October 7, 2009.
>
> Johnson has failed to show that any of these complaints demonstrated that his right to effective assistance had been """'substantially impaired.'""" (*Sanchez, supra*, 53 Cal.4th at p. 90.) The first two issues, that of failing to prepare an affirmative defense and of failing to ask Azevedo questions about the alleged intimidating threats, involve the use of trial tactics and were previously addressed in Johnson's third *Marsden* hearing. The transcript of the preliminary hearing in the record shows that Hjertonsson did question Azevedo about a possible affirmative defense, her use of methadone and her drinking on the day in question. As for Johnson's claim that Hjertonsson failed to obtain photographs of Azevedo prior to the preliminary hearing, Hjertonsson explained that he had not represented Johnson prior to the preliminary hearing. It would be difficult to find him ineffective before he even represented Johnson. Finally, as for the claim that Hjertonsson had failed to respond to Johnson's "kites," an issue that was more recent than the preliminary hearing, Hjertonsson explained that he had spoken to Johnson at length and that they had discussed numerous issues.
>
> We find no abuse of discretion on the trial court's part in denying Johnson's fourth *Marsden* motion, as Johnson has failed to demonstrate that his right to effective assistance of counsel was substantially impaired. (*Sanchez, supra*, 53 Cal.4th at p. 90.) Any error in the procedure used by the trial court in appointing Conflict II for a limited purpose, and then relieving Conflict II when that purpose was satisfied, was harmless.

(LD 1.)

### a.   Substitution of Counsel

First, the Court finds that Petitioner's claim fails to present a cognizable ground for relief on federal habeas review. Petitioner challenges the trial court's application of People v. Marsden, 2 Cal.3d 118 (1970), after it conducted a fourth Marsden hearing. Generally, the interpretation and application of state laws are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state

law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Sawyer v. Smith, 497 U.S. 227, 239 (1990) (quoting Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"). Petitioner contends the trial court erred in the procedure and manner in which it conducted the Marsden hearing, and that the appellate court's findings that the trial court's procedure was not prejudicial was erroneous. The claim concerns the interpretation and application of state law and is therefore not cognizable on federal habeas review. Moreover, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.1989). For this reason, the claim should be rejected.

Nevertheless, the Ninth Circuit has stated that the denial of a Marsden motion to substitute counsel can implicate a criminal defendant's Sixth Amendment right to counsel and is properly considered in federal habeas corpus, Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir.1994), and the Sixth Amendment requires an inquiry into the grounds for a motion to remove counsel. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.2000). However, as noted by Respondent, there is no direct precedent from the Supreme Court which holds that a denial of a motion to substitute counsel can be unconstitutional. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122. Therefore, Petitioner's allegation that the trial court erred in denying his motion to remove counsel does not present a cognizable claim on habeas review.

In any event, the Supreme Court has granted state courts a great deal of leeway on the issue of attorney substitution. For instance, the Supreme Court has recognized that a defendant is entitled to counsel who "function[s] in the active role of an advocate." Entsminger v. Iowa, 386 U.S. 748, 751 (1967); see also United States v. Cronic, 466 U.S. 648, 656 (1984); Anders v. California, 386 U.S. 738, 743 (1967). However, the Court pointed out that the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel, Morris v. Slappy, 461 U.S. 1, 13-14 (1983), and absent a showing that "counsel actively represented

conflicting interests," the defendant "has not established the constitutional predicate for his claim of ineffective assistance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

In this case, it is clear from the record that the state court ruling was not contrary to or an unreasonable application of Supreme Court precedent. There was no evidence of a complete collapse in the relationship. There was also no evidence of a conflict of interest. In light of the record, Petitioner fails to demonstrate that the appellate court's rejection of his claim was contrary to or an unreasonable application of the Supreme Court authority. The claim should be rejected.

### b. Cal. Penal Code § 995

Petitioner also complains that the state court did not properly follow procedure as dictated by Cal. Penal Code § 995. Again, the issue is one of the application and interpretation of a state law. It is not cognizable in a federal habeas action. Estelle, 502 U.S. at 67. Although Petitioner attempts to make out a federal claim by claiming a violation of his due process rights, merely placing a "due process" label on a claim does not transform it into a federal one. Park v. California, 202 F.3d 1146, 1154 (9th Cir.2000). Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999) (citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion)). In this case, Petitioner does not point to any Supreme Court precedent which the state court decisions could be judged contrary to, or an unreasonable application of. His claim is solely grounded in state law and is therefore not cognizable. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). The claim should be rejected.

### 2. Ineffective Assistance of Counsel

Petitioner next claims counsel rendered ineffective assistance by inadequately preparing for the preliminary hearing by failing to acquire photographs of the victim's injuries prior to the

hearing for impeachment purposes, and by failing to question the victim in order to establish a basis upon which to cross-examine the victim at trial. Petitioner presented this claim by habeas petition to the California Supreme Court, where it was denied without comment. Since the decision was unexplained, the Court "must determine what arguments or theories supported . . . or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 131 S.Ct at 784. Petitioner bears the burden of showing that "there was no reasonable basis" for the state court decision. Pinholster, 131 S.Ct. at 1402.

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Harrington, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

different." Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 693). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466 U.S. at 687).  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788.  Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

### a. Photographs

Petitioner complains that counsel failed to obtain photographs of the victim's injuries prior to the preliminary hearing. He argues the defense would have been able to impeach the victim such that one or more charges would have been dismissed.

Petitioner's claim is pure speculation, and in any case, it is without merit for lack of prejudice.  As noted by Respondent, the photographs were admitted into evidence at trial. (RT 160-161; CT at Exhibit List.)[4]  Since the photographs made no difference at trial under a higher standard of proof than required in a preliminary hearing, a fairminded jurist could conclude that the photographs would not have resulted in dismissal of charges.

### b. Questioning of Victim at Preliminary Hearing

Petitioner also claims counsel failed to question the victim at the preliminary hearing so that he would have a basis upon which to impeach the victim at trial.  This claim, too, is speculative.  Petitioner fails to identify any line of questioning which would have provided

---

[4] "RT" refers to the Reporter's Transcript on Appeal.

1 conflicting information on which to impeach the victim. Further, he fails to establish the victim
2 would have provided conflicting information. Additionally, as Respondent points out,
3 questioning of witnesses at a preliminary hearing by the defense is severely limited and cannot
4 be used for purposes of discovery. Cal. Penal Code § 866. In sum, the claim is completely
5 speculative, and therefore, Petitioner cannot establish prejudice. The claim should be rejected.

      3.     Disclosure of Evidence

7 In his final claim for relief, Petitioner alleges the prosecutor committed misconduct by
8 improperly withholding exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83
9 (1963). He claims the prosecutor failed to disclose the photographs of the victim until after the
10 preliminary examination; therefore, he was unable to effectively cross-examine the victim at the
11 preliminary examination. This claim was also raised in a habeas petition to the California
12 Supreme Court where it was denied without comment. Therefore, the Court must determine
13 "what arguments or theories supported . . . or could have supported, the state court's decision;
14 and then it must ask whether it is possible fairminded jurists could disagree that those arguments
15 or theories are inconsistent with the holding in a prior decision of this Court." Harrington, 131
16 S.Ct at 784.

17 A defendant has a constitutionally protected privilege to request and obtain from the
18 prosecution evidence that is either material to the guilt of the defendant or relevant to the
19 punishment to be imposed. Brady v. Maryland, 373 U.S. 83, 87 (1963). Under Brady, "the State
20 violates a defendant's right to due process if it withholds evidence that is favorable to the defense
21 and material to the defendant's guilt or punishment." Smith v. Cain, 132 S. Ct. 627, 630 (2012)
22 (citing Brady, 373 U.S. at 87). Even in the absence of a specific request, the prosecution has a
23 constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about
24 the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976). "[E]vidence is 'material'
25 within the meaning of Brady when there is a reasonable probability that, had the evidence been
26 disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449,
27 469–470 (2009). A reasonable probability is such that the likelihood of a different result is great
28 enough to "undermine[ ] confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419,

1  434 (1995).

2  As Respondent correctly notes, the Supreme Court has concluded that the Constitution
3  does not require preguilty plea disclosure of impeachment information. United States v. Ruiz,
4  536 U.S 622, 629 (2002). The Supreme Court has not addressed whether impeachment
5  information must be disclosed prior to a preliminary examination, and this is fatal to Petitioner's
6  claim. Knowles, 556 U.S. at 122. In any case, it is logical to conclude that if the Constitution
7  does not require disclosure of impeachment evidence prior to entry of plea, then it does not
8  require it prior to the preliminary examination. The concern in Brady was the "avoidance of an
9  unfair trial to the accused," and Petitioner was in possession of the evidence at trial. Brady, 373
10 U.S. at 87.

11 Moreover, the Ninth Circuit has concluded that a Brady violation may be cured "by belated
12 disclosure of evidence, so long as the disclosure occurs 'at a time when disclosure would be of
13 value to the accused.'" United States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000)
14 (quoting United States v. Span, 970 F.2d 573, 583 (9th Cir.1992)). In this case, Petitioner does
15 not dispute that he received the photographs in time for trial.

16 Accordingly, the state court rejection of Petitioner's claim was not contrary to or an
17 unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. §
18 2254(d)(1). The claim should be denied.

19                          **RECOMMENDATION**

20 Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas
21 corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter
22 judgment.

23 This Findings and Recommendation is submitted to District Judge Lawrence J. O'Neill
24 pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of
25 Practice for the United States District Court, Eastern District of California. Within thirty (30)
26 days after being served with a copy of this Findings and Recommendation, any party may file
27 written objections with the Court and serve a copy on all parties. Such a document should be
28 captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the

Objections shall be served and filed within fourteen (14) days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**February 6, 2014**__         _____**/s/ Gary S. Austin**_____
                                                                    UNITED STATES MAGISTRATE JUDGE